### THE FRED A. DAVENPORT.

#### (District Court, E. D. Georgia, S. D.   March 1, 1913.)

SALVAGE (§ 30*)—NATURE OF SERVICE—ACTION FOR COMPENSATION.

An ocean steamer, not engaged in the towing business, but on a voyage with a valuable cargo on board, which, at the request of a lightship and at considerable risk to herself and cargo, went to the rescue of a schooner stranded on Frying Pan Shoals, and skillfully released her without injury from a dangerous position, in which she had lain all night signaling for assistance, *held* entitled to a salvage award of $6,500.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 72–74; Dec. Dig. § 30.*]

In Admiralty. Suit for salvage by the Baltimore & Carolina Steamship Company and others against the schooner Fred A. Davenport and cargo. Decree for libelants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Edward S. Elliott, of Savannah, Ga., Ernest Dart, of Brunswick, Ga., and Marbury, Gosnell & Williams, of Baltimore, Md., for libellants.

Daniel H. Hayne, of Baltimore, Md., and Garrard & Gazan, of Savannah, Ga., for respondents.

SPEER, District Judge (orally). The great trouble in cases of this sort is the conflicting evidence of the officers and crews of the vessels in controversy. Here, however, we have some testimony wholly impartial, evidence that I heard myself. I was very much impressed with the witness who gave it. He was the marine engineer on the lightship stationed on Frying Pan Shoals. He said:

"On the morning of August 31st the mate of the Davenport and two seamen came up and asked permission to come aboard. The captain told them to come ahead. When they got on the mate asked if he could send a wireless message; that their vessel had been ashore since last night. The captain asked them if they had had breakfast, and they said they had not, and breakfast was fixed while the wireless operator was preparing his engine to send the message. After eating breakfast the wireless operator took the mate in the room and sent a message to the commandant at the navy yard at Charleston. He tried to get Wilmington first. After he got the commandant, that message was relaid by the Western Union, and afterwards got into communication with the revenue cutter Seminole. He [the mate] said that he had been sounding around the vessel all night and found shallow water. The sounding showed less water than the ship drew, and it struck several times very hard on the shoals."

It is not disputed that this vessel was on the most dangerous shoals on the coast. This man goes on to testify that the mate who came with these seamen in the boat stated that they had been firing guns of distress and making signals during the night. It is in evidence that they felt they were in very great danger; that they wanted to get out of there; that the cost must not be considered. The Weems comes along, a steamer not engaged primarily in towing. She had a valuable cargo on board, of $60,000 in value, which she jeopardized when she undertook to save the vessel. I do not consider those values in estimating the salvage. I consider them in a sense as showing the courage and determination the master manifested in going in and risking them for that purpose. It is impossible not to admire the skill with which the Weems was handled. The Weems was called upon by signals from the lightship; the blowing off of steam. She was informed of the danger of the Davenport and was urged to rescue her. She came in, throwing the lead; came very skillfully, very slowly; came in at high tide. She was in an exceedingly dangerous situation herself, for if she had gone ashore on one of those dangerous lumps on high tide, in view of the character of the sand, the chances are very strong that she herself would have been a complete wreck. In three hours' time the Weems rescued the stranded vessel, absolutely uninjured, nothing more than a scratch somewhere about her garboard strake, and the Davenport went on her course.

Now, a steamer not devoted to towing, or in the wrecking business, is accorded higher remuneration than tugs kept for that purpose,

whose owners look to ventures of that sort for remuneration. This was not salvage service of the very highest character, but it was salvage service of very meritorious character, and I think I am entirely justified in allowing $6,500 to the Weems as salvage; and this I do.

If the decree can be drawn so that a month's wages could be given the officers of the Weems and the crew aboard engaged, I will be glad" to have that done. It is so ordered.